Thank you, Your Honors, and good morning. Patrick Ford on behalf of the appellant Marcus Grant, and may it please the Court. Your Honors, NAPU v. Illinois teaches us that prosecutors need to accurately describe to jurors the benefits that they're giving witnesses testifying on behalf of the state. The thinking is that witnesses who appear of their own volition with nothing to gain by their testimony may be more credible or probably inherently more credible than witnesses who are testifying in exchange for a benefit or leniency in a sentence. The law tells us, and it tells the jurors, that they may distrust the testimony of witnesses that are testifying for such a benefit. And in order to properly determine credibility of the witnesses, the jurors need to fully understand the extent of the benefits that the witnesses are getting. A prosecutor commits misconduct by misleading the jurors as to the nature of the benefits that it has offered to a witness on behalf of the prosecution, and that denies the defendants due process rights as well. In the present case, Lawrence Hunter was the state's key witness who was facing attempted murder, guns, gang enhancements, gun enhancements, and so forth. We have to review this through the lens of AEDPA. Correct. So how, within AEDPA, is the Court of Appeals analysis of what was said about the offer unreasonable? Well, the state court, I think, made two primary mistakes. In the first one, the rulings that it made, I think, were fairly unreasonable. The first thing it said was that it was the defense who had misrepresented the nature of the agreement when that's not true. I think it can be fairly said that the defense stated that the deal that was in place was an either-or deal, 31 years, if the witness testified truthfully according to the court, and 139 years to life if it didn't. And so the suggestion that when the defense referred to this as an either-or deal, that somehow that that was misrepresenting the nature of the deal, I think, is unreasonable. But you got the witness to testify to exactly that? I'm sorry, Your Honor. Well, your opening brief on cross-examination defense counsel elicited from Hunter that his understanding of the deal was if he testified truthfully, he would receive 31 years, and if he testified untruthfully, he'd receive 139 to life. So the witness is saying he understood it the same way the defense counsel did. Right. So where's the prejudice? Because if the jury hears from the witness, who's the person who's reportedly motivated by the sentence, that that's how he understands it, so he can save himself 100 and what, 7, 8 years. How is any variation between the two extremes, the fact that maybe as a matter of law this trial judge could have gone to some places in between? That seems irrelevant if the point has been made to the jury that Hunter gains an enormous benefit. Basically, it's either 31 years or it's the rest of his life. So it seems the record is pretty clear that the jury hears that Hunter has reason to testify the way the state wants him to. Right. What's missing here? I think that the answer, Your Honor, is that that was the witness's first answer, that the jurors received several pieces of information regarding the nature of the sentence in play, and that was the first piece of information that it received. But he's the one who's motivated by the sentence. And if that's his understanding, that seems to me to make the argument that defense counsel was trying to make kind of crystal clear. And what happened later, I'm having trouble figuring out how your client is prejudiced, particularly to the level left of it, even directly. How is he prejudiced if, in fact, the jury heard the theory that the defense counsel wanted them to believe was the impression of the witness, and the witness said, yeah, that's what I understood? And the answer, Your Honor, is because the juror was misled by the prosecution as to the nature of that deal follow-up. I'm not sure that makes any difference. That is, there could be wastations between 31 years and 139 years. But if the witness has testified the same way, it becomes a matter of argument, doesn't it? I don't believe so, Your Honor. When the prosecutor takes the agreement, first of all, we look into a couple of things. We look to the statements that the ‑‑ and I think it's a good fact, obviously, that the witness said that he believed that it was an either-or situation because I think that was the truth. So I think the next question we look to, the question that we ask is, did the prosecution thereafter commit any acts of deception to try and dissuade the jurors of that belief? And the answer is yes. And so I think it's unfair to stop when we get to the witness's statement about, yes, I believe that's what it is. I think that helps our case. But the nature of our argument here has to do with the prosecutor's deception, and that definitely took place. If the prosecutor said, instead of saying a hunter could get a sentence anywhere between 31 and 135 to life, instead said somewhere between 31 and 135 to life, would that have been okay? I don't think so. And I get the point. In the truth, I think that's misleading because I want to make two points about the deception, if I can. The first is that the court didn't have the discretion that the prosecutor suggested that it had. The court did have discretion in one meaningful way, and that was to dismiss the strike priors. That would have cut all the things in half, and it would have greatly impacted the sentence. The court told the witness before testifying that, let me tell you something, there is zero chance that I'm going to dismiss the strike prior in this case, so understand that. Right? So that eliminates all of the meaningful discretion that the court had. So is it possible that there was some remaining? Is this the point where the judge says, potentially, or is that in some other context? I think the judge walks off, and that's important, too, and I'll get into it, and I'll address that. The court said, when it was advising the witness, the judge said, so I want to let you know something. I think the term the judge used was, if you stay in your cell and you don't show up, I'm going to be sentencing you to 139 years to life. And then he said, right immediately after, and if you testify untruthfully, I'm going to be sentencing you to 139 years to life. And then he said, or potentially. Now the state relies on that as kind of a hook to say, well, geez, that meant that it was potential. But then if you look to the statement that the court made after saying, or potentially, it was, it's going to be one or the other, which gets us back to either or. And if I could just say that I'm a little bit troubled, it adds to the problem, I think. The idea that we would surrender to the trial judge the role of being the truth finder in these situations, I think that's terrifically unfair. The judge was certainly all-powerful, but by no means all-knowing, right? And if the judge had actually known the truth, he wouldn't have qualified to sit on the case, right? The only reasonable interpretation I think that we can draw from that statement is that the witness had to implicate the defendant. It's, I think, once the jurors learned that there was a deal that the witness had to testify truthfully in order to get his deal, implicating the defendant, and then he testifies and implicates the defendant, I think they're given the idea then that the witness has told the truth. And this kind of usurps the fact-finding function from the jury. That's a very unfair addition to the problem that we have now. And I would say that if there's any room for suggestion that the prosecutor was somehow, that some of this was inadvertent or technically truthful, I think we look to see what happened, what the prosecutor's actions were. As Judge Clifton said, it was the defense counsel who asked the witness exactly what he thought the terms of the deal should be. The prosecutor never did, which is an unusual thing. When it was time to send the exhibits back to the jury room, the prosecutor asked that the agreement, which suggested that it was an either-or deal, not be sent back to the jurors. I'm not sure how this makes any difference, because we're here reviewing a decision by the California Court of Appeal, which was explicit in saying it saw no reasonable likelihood the jury would have understood and not failed to appreciate the point the defense counsel of trial was trying to make, which is that it was enormously in Hunter's best interest, and he was motivated to testify the way the prosecutor wanted him to. That's the point. That's the injury that your client alleges to have suffered and how he's been prejudiced. And the California Court of Appeal said, uh-huh, that's not how it played out. So the notion that somehow the prosecutor transgressed him and we're not a prosecutorial disciplinary body, we're concerned about whether the judgment against your client was defective under EPTA. And I have a real hard time understanding, and I don't think I've heard from you, a reason to think that the fact that Hunter was motivated to testify against your client was lost. Right. Your Honor, respectfully, this is a due process body, right, and we all understand that. And I think the court, as I said, the court got it wrong by suggesting somehow that, by flipping this thing on its head and suggesting that it was the defense counsel who had misrepresented the deal. That's number one. But then the court said, well, let's just assume that the prosecutor did commit, did mislead the jurors when she said that the sentence could be anywhere between 31 and 139. Let's assume that happened. The court said, well, that's not meaningful because the jurors would not have understood the intricacies of California law. And so, therefore, we find that it's not significant. Nonsense, right? That's nuts. The idea that the prosecutor could mislead the jury in that way, could misrepresent the law, and overlook it and suggest, you know what, the jurors would never have understood the law anyway, so we're just going to overlook that. We think that's unreasonable. We think it's unreasonable under EPTA or under any standard. We've taken you over. I'll give you two minutes for rebuttal. Thank you. Okay. I will hear now from Mr. Thakor. Did I pronounce that correctly? Almost, Your Honor. Thakor. Thakor. Okay. Thank you, and good morning, Your Honors. Deputy Attorney General Shahzad Thakor. May it please the Court. I want to start at the outset by kind of talking about the terms of this leniency agreement, because petitioner really relies on the fact that this was an either-or deal, and it wasn't. And, of course, I don't want the Court to just take my word for it. So if the Court wants the written leniency agreement as part of the excerpts of record at pages 88 to 89, and what the Court will find is that Hunter was given a deal that, if he testified truthfully in the estimation of the trial judge, he would be given 31 years. And if he testified untruthfully, he would be subject to a sentence of up to 139 years. So if you look at paragraph 7, it says that the trial judge may sentence him up to a maximum of 139 years to life. Why does that matter? The prosecutor said, of course, that Hunter could be sentenced anywhere in between 31 years and 139 years to life. That technically wasn't correct. That technically was correct, Your Honor. Right. Exactly. There are places in the California Code that we all thought was pretty clear about this, and it's California law, so they rule that there were other sentences that could have been imposed by the trial judge. It was not true that it could have been anything between those two. Anything. My real question is, how does that matter? It doesn't. It doesn't, Your Honor. Exactly what you pointed out in the questioning to opposing counsel, this is about what did Hunter believe. Hunter had his opportunity. He stated on direct and on cross-examination what he believed the terms of the agreement were. The jury had the ability to, therefore, evaluate his credibility. So how does this then become one of those instances of egregious prosecutorial misconduct that violates a defendant's due process rights? It simply doesn't. And I heard opposing counsel cite to Nippu, the prosecutor failed to correct a witness's testimony that he had not received any leniency agreement. That's completely different from the facts of this case. And one of the cases, in case the court is having any trouble with this case, I would urge the court to review a few of the guideposts in Donnelly v. DeCristoforo. There, the high court dealt with a prosecutorial closing argument in which the comments that were given were deemed ambiguous by that court, but I believe the Fifth Circuit Court of Appeals had stated that they found a damaging interpretation from those closing remarks. Two important points from that case. One is that courts should not lightly infer the most damaging interpretation from a prosecutor's closing argument. And the reason the court cited for that is closing arguments aren't often prepared in advance in totality. They're subject to errors with syntax, and I believe that's why there is this hyper-technical issue with the use of the word anywhere. The use of the word somewhere would have been more accurate. The other point that the court made in DeCristoforo is there's a distinction between ordinary cases of prosecutorial misconduct and cases that are so egregious like Napoo, like Brady, like Miller v. Pate. Those end up violating a defendant's due process rights. This is not one of those egregious cases, and for those reasons, I ask the court to affirm the district court's judgment. Thank you, Your Honor. Thank you, Counsel. We'll hear a rebuttal from Mr. Cook. Thank you. We would suggest that for all practical purposes, this certainly wasn't either ordeal. Counsel suggests he points this court to Paragraph 7 of the leniency agreement, but he fails to mention Paragraph 6, which suggests that failure of the witness to comply with or satisfy the witness's obligations will subject him to being sentenced to the maximum sentence of 139 years to life. And then true, it says in Paragraph 7 that the court may sentence the witness to up to the maximum sentence of 139 years to life. I think reasonably and practically, the only way that these things can be read together is to suggest, as the court told the witness, that this was an either or deal. Regarding, I'd just like to get to Judge Clifton's point on prejudice. Please keep in mind that Hunter was the only witness who implicated the appellant. There was no forensic evidence supporting it. We believe that it's duplicitous for the prosecution to offer its key witness such an incredible deal as this. They needed the evidence that badly, and then come before a court later and say, you know what, actually we didn't even need it that badly because the evidence was so strong against him. I reject that. We reject that. And I'd ask this court to recognize that the Supreme Court has told us that prosecutors commit a due process violation when they mislead the jurors as to the nature of the benefits that it's given its witnesses, especially its key witnesses. We'd ask this court respectfully to accept that premise, and I'll submit it. Thank you, Counsel. The case, as argued, is submitted.
judges: CLIFTON, COLLINS, LEE